Good morning, Your Honor. David Kline, appearing on behalf of Mr. Toelupe. I'm here and I was just listening to the previous argument, of course, and one of the things that I'm asking for, Your Honor, in this case is for there to be a full remand. And unlike the previous case, which this Court had just been listening and had just heard, in this case, Mr. Toelupe did preserve his Sixth Amendment argument at his sentencing. When he was sentenced on the acquitted conduct, and this was after Apprendi and a year before Blakely had been decided, we did object on the acquitted conduct based upon Apprendi. After that, I mean, Blakely eventually came out and this case was eventually given a limited remand. And subsequent to Mr. Toelupe to the same amount of time. And then Ben Salazar came out. And in that case, of course, the Ninth Circuit held that in preserved constitutional error there should be a full remand. And I think that there's no question that in this case that Mr. Toelupe, who's basically doing life in jail at this point based upon acquitted conduct, should be given an opportunity at minimum to have a full remand. The more interesting issue, perhaps, is on the acquitted conduct. And I realize, of course, that there has been a recent decision at a Ninth Circuit in United States v. Mercado having to do with acquitted conduct. However, as Judge Hugg had pointed out in United States v. Putra, it is difficult for me to see how the jury's effort is not seriously undercut and, in fact, nullified when the sentence of a defendant after an acquittal on a charge is the same as if the defendant had been convicted. And that was, of course, three years before Apprendi in 1997. What do we do with Mercado? I'm sorry, with Mercado? Well, Mercado came out on the same day as Cunningham. And when we look to the issues in front of the Ninth Circuit as far as whether or not one panel can basically change what another panel has said, there is case law under Miller v. Gammie that under certain circumstances that a panel can do that. We could say that there was a brilliant dissent in Mercado. Is that right? Well, of course. I mean, you know, Judge Fletcher, of course, we — the other Judge Fletcher had written a dissent in that case. There's an initial, Judge B. Fletcher and Judge W. B stands for better. Well, you know, Your Honor, when I was — It takes sides on which Fletcher we follow. In which case do you want us to follow and how do we distinguish the other? All I can say is I was always raised to listen to my mother, so — I was raised to listen to my mother, but it was my mother who did the raising, and I have now chosen to ignore her. But hopefully not in this case, Your Honor. But nonetheless, Your Honor, I think that, you know, clearly different individuals are troubled by the use of acquitted conduct. And if there has to be one poster child for the problems with the use of acquitted conduct, it has to be Mr. Tovalupe. I mean, he's doing life in jail right now. I mean, basically, he was about 40 years old when he was sentenced to 40 years in jail, and he's criminal history Category 1, acquitted with 24 pounds of ice, 26 pounds of ice, and yet he's still there. I mean, and — Is this a reasonableness argument, or is this a — what argument is this? Well, first of all, it's a Sixth Amendment argument. I mean, because clearly I think that Judge Fletcher is correct. I think that Judge Hugg was correct when he raised the issue in United States v. Putre as far as the nullification of a jury verdict. I think that clearly this is a Sixth Amendment argument that was made at the trial level when he was being acquitted, and is now being made again. As far as it being a reasonableness argument, you know, how anyone could say it's reasonable to sentence someone based upon acquitted conduct or something. Then we've got two hazards in the navigation. The first hazard is Percado, and if we're going to do an embank argument in this case, it's going to be kind of difficult. The second one is Carthy Zavala on the reasonableness. So we have two kind of things we have to dance around in this case, I think. Well, I think that the first thing we're all waiting for is Reeder and Claiborne, right? I mean, I think that — I assume that Carvalho, you know, is — you know, Carthy and Zavala are all going to come out after Reeder and Claiborne. I would assume everything will slide downhill at that point. And so I think we're all waiting for Reeder and Claiborne, and I think that it would be a circumstance where there will be some discussion about acquitted conduct. I'm not saying that there is, but one never knows. I mean, and in this circumstance, you know, when we look at, you know, clearly, you know, Cunningham came out a couple of months ago, and he came out actually on the same day that Mercado came out on. And Cunningham once again reaffirms the holdings in Blakely and in Booker, and I think it strengthens those holdings even further. And so when we're dealing in this circumstance, you know, as far as this panel waiting until Reeder and Claiborne, I think that's a very reasonable approach. But I do think that, nonetheless, at minimum, that Mr. Tolupe is entitled to a full remand, given the fact that his — Well, I — speaking only for myself, our tools are kind of limited these days because of — in all of our cases, we're running into this problem. And being the Supreme Court's guide, of course, they're the big dogs, so they can say anything they want. And we've raised enough noise down here on this stuff that it's very possible that they have some language which will help us in all these issues. On the other hand, it may not. But until Reeder comes down — and in order to give your client the best shake, it seems to me we should wait to see what kind of tools we're dealing with here. And I agree with that, Your Honor. In fact, when I had submitted my brief, I did put down as connected cases of all-in Cardi for that exact reason. And then eventually, of course, Reeder and Claiborne is there. But even if — you know, and I realize now we're like hyper — you know, trying to pretend about what will happen in the future. But, you know, one thing that he should have at minimum is a full remand, regardless of how Reeder and Claiborne come out. And he should have that opportunity to present additional evidence to the Court regarding the 3553 factors. He should have an opportunity of allocution to the trial court. And, you know, Judge Brunetti, when you wrote the court guard decision, which was relied upon by Beng Zalazar, I mean, Mr. Cardi was given the full remand at that — you know, at that point. And he was given the full remand because of the fact that there was constitutional error and it was a trial court relying upon — relying upon facts that had not been proven to a jury. And as a result of that, I mean, if there's one person who — I mean, 40 years? I mean, he'd almost be out at this point if we didn't rely upon acquitted conduct. I mean, that's — I mean, you know, 40 years is a long time, Your Honor. I mean, it's his entire life. And it's all based upon acquitted conduct. And when we — and when we look to what Judge Fletcher said in Mercado, clearly allowing, you know, judges to consider conduct rejected by the jury, the Court allows the jury's role to be circumvented by the prosecutor and usurped by the judge, two of the primary entities against whom the jury is supposed to protect the defendant. I mean, and — and I realize that the Court may feel that its hands are somewhat tied by the Mercado decision, but perhaps after Reader and Claiborne, this Court may feel otherwise. Thank you. Roberts. Okay. Thank you. And you've saved a little time. Thank you. Good morning. May it please the Court. Assistant United States Attorney Tom Brady on behalf of the United States. As I was flying over here from Hawaii, I was wondering why didn't the Court just waive oral argument? Combs had come out, Mercado had come out, and I know counsel was thinking the same thing. Why didn't the Court waive oral argument? Because Deng Salazar came out, and basically that's what this case is all about. Did you request that we waive it? No, Your Honor. I did not. That might be a good reason. Well, and I think this — I think this case is somewhere in the middle is the reason why. I think that — Well, without due respect, I think both — all of us are in the same spot. I mean, we're all trying to figure out whether we have openings. We want to resolve cases as soon as we can, and so we're trying to probe around as much as you are trying to do that. Now, so why do you think we can go further? I think we can go further because Deng Salazar tells us that if there's harmless error, this Court can make a decision onto a loupé. And I think that's what we have here. Obviously, Deng Salazar — But first has to be remanded before we review for harmless error. Well, I would suggest to the Court that there's harmless error on the record now that the Court can review and say that the Government has met its burden. The problem I have with that is that it seems like we're making the decision for the district judge as to what he would have done. I think that is true, but I think that there is enough indication by the district court, Judge Jones, who was a visiting judge from Oregon, that the Court can be comfortable in that decision. And I'd like to address some of those pieces of evidence that I'm relying on. When this case was originally sentenced, when Mr. Tolupati received the 40-year sentence, Judge Jones imposed a sentence below the guideline range that was a total offense level of 44. He was looking at life at that time. And in fact, Judge Jones ignored that range and sentenced him to 40 years. At the time of the original sentence, the district court also imposed a consecutive 20-year term as to both counts 2 and 16, and then ran them concurrent as to the other counts. Mr. Tolupati is no poster child. If anything, he's a poster child for people who are involving the community in ICE. He was convicted of seven counts of drug distribution, one for conspiracy. To achieve total punishment, Judge Jones stacked two counts together to come up with that 40-year term. At the time of the original sentence, the district court made specific findings and this was fully litigated by counsel and myself as to role in the offense, as to obstruction of justice, no points for acceptance of responsibility. And at the time of the original sentence, all of the district court's findings were made by at least the heightened standard of clear and convincing evidence, contrary to counsel. I found that argument very interesting in your brief. Judge Jones is a very articulate and careful judge, and it seems like in this case you really went to extremes to fetter out all the evidence, assuming that the law stays in place. If the law stays in place, then you'd follow Judge Jones, assuming the law doesn't stay in place, then of course we would be somewhere else. But assuming it stays in place, it seems as though Judge Jones went as low as he could, very frankly, under the circumstance, assuming, again, we have all these stacks of law that we have to sort through. Is that your position? It is, Judge. And that would answer the harmless error? I think so. And tell me why. Well, clearly Judge Jones was the smartest person in the room at the time of sentencing. And I would suspect that he's the smartest person in any room that he walks into. And he went out of his way to come up with this sentence of 40 years. And I think he did so by tiptoeing through the law. And one of the factors that he had to deal with was counsel's downward departure based on many factors, use of acquitted conduct, lack of criminal history, extraordinary family situation, totality of the circumstances. These are many of the factors that are outlined in 18 U.S.C. 3553. So the Court had the discretion, acknowledged that it had the discretion to sentence him based on that motion for downward departure, and chose not to, elected not to. And finally, this is the most compelling, Judge, is that the district court's words during his limited Ammaline remand hearing in which he said, although I am sorely tempted to take each count of conviction and add the maximum for each count to run consecutively until a life sentence would be achieved, I have elected to adhere to my original sentence. Clearly, as he stated at the limited Ammaline remand, he was not concerned with going lower. His concern and inclination was to go higher. And he chose not to. He exercised his discretion. And I think, again, getting back to your argument as to whether or not you'd feel comfortable doing that, I think when you look at all of those factors, I think that the Court can be comfortable in saying that in this case, the government has established that it's more probable than not that the error did not materially affect Mr. Tolupe's sentence. Kennedy. Is it your feeling that none of our pending cases, including Rita in the Supreme Court, would affect your argument? That is my opinion at this time. At this time, yes. One of the problems I have, as you could detect from my earlier questions, is the fact that I know we can review for harmless error for what took place below, but it seems to me that where the judge would be reviewing it under a different standard, not just an Ammaline standard, but under a standard of a full examination of the sentencing, that, as I stated before, it seems like we're sort of stepping in and making a decision that the district court really should be making in the first instance under the standard that applies to a full sentencing review. I can appreciate the Court's concern on that, but I think when you look at the record on the limited Ammaline remand, the Court was very clear as to say that the advisory guidelines were just one factor. He did state that he was taking a look at all of the factors in 3553. And I think he did use the language that suggests that he was trying to achieve a reasonable sentence. So I think that that's fair. I'm sorry. Go ahead. When I was talking to you before, I talked about the structure of the law and how Judge Jones proceeded. It seems to me what you're arguing, if I got this right, is that if we look at Combs and some of the other cases where we've been probing, there's got to be a place where we don't continually review over and over again the entire resentencing. In other words, we know that we've had Ammaline and the Sixth Amendment issues and all these issues, but there's got to be a point where you draw the line and say, well, no matter what we do, if it's harmless, we're not going to go through and send it back to the district court and redo it again. And it sounds like you're arguing that's one of our cases. And even though we have stacked up here a series of legal cases which could change some of the structure, it still should not be one of those cases that would fall into, these have to be having a resentencing. That's true. That is the government's position. And it sounds like also that, and this has concerned me a lot, that there's an area in all the sentencing problem where you escape, if there's certain conditions, in this case harmless error, where you escape some of these problems that are indicative of the intricacies of the sentencing process, that if you end up in the harmless, then you don't get caught up in that. That's correct. Is that your position? That is the government's position. Thank you. Okay. Then thank you. Thank you. Regardless of the harmless error, Your Honor, we can't say there was harmless error in this case. Let's go back to where we started. Your Honor, if you assume the law is what it was and that Judge Jones was dealing with what he had to work with, he gave your client quite a ride as far as that goes. He considered a whole lot of things. Your client could be in jail for life real easy. He isn't. Or more. Judge Jones really, really seemed as he, I mean, he did pretty full resentencing, but you wanted him to do a little better resentencing. Well, no. It isn't that he didn't do a resentencing. He did, he didn't do any sort of resentencing. He had a hearing to determine whether or not he should have a resentencing. Well, but he was on limited remand. And you're going to break that before we get beyond that. Right. And so the issue now is on Bang-Zalazar is whether or not I think the government is conceding that Mr. Tolupe had preserved the Sixth Amendment at the trial level. So there's no issue on that. The only issue at this point is whether or not for the full remand there was harmless error. And the reason that there was no harmless error here is for two reasons. One, there was no mandatory minimum involved in this case. While, you know, obviously we're all respectful for Judge Jones, this case was after Apprendi, and even though, and Judge Jones at the trial refused to have the jury make a finding as far as drug type or drug amount. He specifically said that's not what Apprendi means. Okay? So we have that circumstance where unlike where if there was a 20-year mandatory minimum and he was sentenced to 20 years, obviously there would be a harmless error. But in this case, there is no mandatory minimum. And the second reason why there can't be any harmless error is for basically what is said in Bang-Zalazar. They rely upon another case, and they say, we cannot say with any confidence what considerations for both sides may have been brought to the sentencing judge's attention had they known that he doesn't have to do a guideline sentence. I did the initial sentencing, Your Honor. Back then, even though we argued that sentencing should not be, should not be, you know, we filed motions for downward departure and so forth and so on, the fact is, is everyone had presumed that the guidelines were mandatory. Judge Jones, within a week of the trial, filed, submitted findings that no one even had, had, you know, that were, that no one had an opportunity to challenge, but findings saying that he's finding these drug amounts on beyond a reasonable doubt doing away with the jury verdict. So counsel ---- There was no context to the sentencing. That is correct. Yes. Right. But what I'm saying is, is that when you go to sentencing these days, and what the Supreme Court has said is that what we have to look to is that the factors are 3553. And so when we argue these days to courts as far as sentencing, I mean, the guidelines is clear, it's just one aspect of what the court is to consider. It's the characteristics. And when we did the ---- and as a result of that, we never had the opportunity to put on evidence about his childhood. We never had the opportunity to put in evidence about whatever sort of information that we would desire, because the fact is, is that you had the guidelines and the guidelines were mandatory. That's what Beng Salazar says. And I believe what Beng Salazar says is that when we're talking about harmless error, we're talking about the rare case where there is a mandatory minimum in place, like a 10-year or a 20-year in place. And therefore, if you get sentenced to the 10 or 20 years, you know, we're not going to remand it in that circumstance. But in this case, you have an individual who had preserved his constitutional error in a case where there is no mandatory minimum. As a result of that, he should have the opportunity for the full remand at minimum. Thank you. Okay. Thank you very much. The case of United States v. Torralupi is now submitted for decision.
judges: Hug, Brunetti, W. Fletcher